D66JGONP                    Plea

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                          07 Cr. 484 RMB

DAVID GONZALEZ,

                Defendant.

------------------------------x

                                          June 6, 2013
                                          11:35 a.m.


Before:

                  HON. RICHARD M. BERMAN,

                                     District Judge


                         APPEARANCES


PREET BHARARA,
     United States Attorney for the
     Southern District of New York
TATIANA MARTINS,
     Assistant United States Attorney

FEDERAL DEFENDERS SERVICES UNIT
     Attorneys for defendant Gonzalez
BY:  PHILIP WEINSTEIN,
     Assistant Federal Defender

ALSO PRESENT:
     THOMAS FRANKELIS,
     United States Probation Officer SDNY

D66JGONP                    Plea

                    (In open court)

                    (Case called)

          THE COURT:  So I received a letter, dated May 24, from Ms. Martins saying that it was her understanding that Mr. Gonzalez was going to plead guilty today to Specification No. 6.  Is that everybody's understanding?

          MR. WEINSTEIN:  Yes.

          THE COURT:  So just historically before we do that, there was an original sentencing by me on September 24, 2007 of Mr. Gonzalez to a term of imprisonment of 39 months based on unlicensed dealing in firearms.  There was a period of supervised release attached to that sentence of three years.

          Then in April of 2012 there was a subsequent sentencing based on a violation of supervised release, in particular use of a controlled substance and failure to stay fully in court-ordered treatment, and that resulted in a further sentence of seven months of incarceration.

          Is that everybody's understanding of roughly the history here?

          MS. MARTINS:  Yes, your Honor, and that was followed by one year of supervised release.

          THE COURT:  All right.  Then why don't I ask Christine Murray to please swear in Mr. Gonzalez.

          (The defendant was duly sworn)

          THE COURT:  Mr. Gonzalez, before I can accept a guilty

plea, I need to ask you a series of questions.  I think you're familiar with them from the two proceedings that I mentioned, but, in any event, the purpose of these questions is to establish that you are pleading guilty voluntarily and knowingly and because you are guilty, and also to establish that you know just what rights you would be giving up by pleading guilty.

If you don't understand any of my questions or if at any time you wish to consult with Mr. Weinstein for any reason, please say so, and I'll give you as much time as you need because it is important, it is essential to a valid plea that you understand each question before you answer.

You understand that now you're under oath, your answers to my questions must be truthful and could subject you to criminal penalties of perjury or making a false statement if you did not answer truthfully.  Do you realize that?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Please state your full name.

THE DEFENDANT:  David Gonzalez, Junior.

THE COURT:  You're how old?

THE DEFENDANT:  29.

THE COURT:  You're a U.S. Citizen?

THE DEFENDANT:  Yes.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Some college.

D66JGONP                    Plea

THE COURT:  Where was that?

THE DEFENDANT:  University of Phoenix.

THE COURT:  Are you now or have you recently been under the care of a medical doctor?

THE DEFENDANT:  No.

THE COURT:  What about a mental health physician?

THE DEFENDANT:  No.

THE COURT:  How is your physical health?

THE DEFENDANT:  Great.

THE COURT:  And your mental health?

THE DEFENDANT:  Also.

THE COURT:  Have you ever been addicted to drugs or to alcohol?

THE DEFENDANT:  I wouldn't call it addicted, but I did go to rehab.

THE COURT:  Most people who go through rehab go for a reason.  I am not trying to be a wiseguy.  Rehab for what, drugs or alcohol?

THE DEFENDANT:  Marijuana, PCP.

THE COURT:  When was that?

THE DEFENDANT:  This is going back in Fox Run and Renaissance.

THE COURT:  That was part of the supervision in the case, part of the supervision requirements that I imposed, right?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D66JGONP                          Plea

THE DEFENDANT:  Yes.

THE COURT:  Did you finish those programs?

THE DEFENDANT:  No.  I got discharged.

THE COURT:  Have you had any drugs or medicine or pills or drunk any alcoholic beverages in the past 24 hours?

THE DEFENDANT:  No.

THE COURT:  Anything that might affect your answers to my questions?

THE DEFENDANT:  No.

THE COURT:  Again I am going to ask how you feel today, first of all, physically?

THE DEFENDANT:  Good, great.  I feel good.

THE COURT:  And mentally?

THE DEFENDANT:  Good.

THE COURT:  You understand what is happening here in court today?

THE DEFENDANT:  Yes.

THE COURT:  Here is a question for the lawyers.  Do either of you have any doubts or concerns as to Mr. Gonzalez's competence to plead guilty at this time?

MS. MARTINS:  Not from the government.

MR. WEINSTEIN:  No, your Honor.

THE COURT:  Neither do I.  Based on the record today, including Mr. Gonzalez's own statements, I find that he is competent to plead guilty.

D66JGONP                      Plea

          Mr. Gonzalez, have you had a full opportunity to discuss all aspects of this case with your attorney?

          THE DEFENDANT:  Yes.

          THE COURT:  Including any possible defenses that you might have to the charges in these probation specifications to which you've offered to plead guilty?

          THE DEFENDANT:  Yes.

          THE COURT:  Are you fully satisfied with your attorney's representation of you?

          THE DEFENDANT:  Yes.

          THE COURT:  And with the legal advice he has given you?

          THE DEFENDANT:  Yes.

          THE COURT:  Now I am going to explain certain rights you have and ask you some questions about those.

          First of all, you understand you have the absolute right to plead not guilty today.  Do you realize that?

          THE DEFENDANT:  Yes.

          THE COURT:  Under the Constitution and laws of the United States, if you determine to plead not guilty, you would be entitled to a speedy and public hearing before me on the charges contained in the probation specifications.

          You realize that?

          THE DEFENDANT:  Yes.

          THE COURT:  If you had such a hearing, you would be

D66JGONP                    Plea

presumed to be innocent, the government would have to prove that you were guilty by a preponderance of the competent evidence before you could be found guilty, and you would not have to prove that you were innocent.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you had such a hearing, and at that hearing and at every stage of your case you would be entitled to be represented by an attorney, as you are today and have been throughout these proceedings, and if you could not afford an attorney, one would be appointed at public expense to represent you.  Do you realize that?

THE DEFENDANT:  Yes.

THE COURT:  During the hearing, if you had one, the witnesses for the government would have to come to court and testify in your presence, your lawyer would be able to cross-examine those witnesses for the government, he could object to evidence offered by the government and he could offer evidence and subpoena witnesses on your behalf.

Do you realize that?

THE DEFENDANT:  Yes.

THE COURT:  Also at such a hearing, although you'd have the right to testify if you chose to do so, you would also have the right not to testify if that's what you wanted to do.

You realize that?

THE DEFENDANT:  Yes.

D66JGONP                    Plea

THE COURT:  Even now, this morning, as you're entering this guilty plea, you still have the right to change your mind and to plead not guilty and have a hearing on the charges contained in the probation specifications.

Do you realize that?

THE DEFENDANT:  Yes.

THE COURT:  If you do plead guilty and if I accept your guilty plea, and you give up your right to the hearing I have been describing and the other rights we have been talking about, and there will be no hearing, but I will still enter a judgment of guilty against you.  Do you realize that?

THE DEFENDANT:  Yes.

THE COURT:  I will thereafter -- and we have to have a discussion when this is going do happen, but afterwards I would sentence you on the basis of your guilty plea and also information that I may receive from the lawyers.

You may recall on May 28th I mentioned in the memo endorsement that the government and the defense counsel may submit letter submissions by May 31, 2013 if they have a position on sentencing.  I don't think I got any such submissions.  Is that right, any submissions from the government?

MS. MARTINS:  Not from the government.

THE COURT:  None, right?

MR. WEINSTEIN:  I did not submit a letter.

D66JGONP                    Plea

THE COURT:  So, anyway, so do you realize all of that as well, Mr. Gonzalez?

THE DEFENDANT:  Yes, I realize and I understand.

THE COURT:  Have you received a copy of the Probation specifications which contain the charges against you?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed fully with Mr. Weinstein those charges in the Probation specifications, in particular Specification No. 6?

THE DEFENDANT:  Yes.

THE COURT:  You have, to which you intend to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  Again I am going to ask if you're fully satisfied with Mr. Weinstein's legal representation of you?

THE DEFENDANT:  Yes.

THE COURT:  And with the legal advice he has given you?

THE DEFENDANT:  Yes.

THE COURT:  So No. 6, just so we're all clear, there were six total before, and now I take it the government is accepting a plea to No. 6 in full satisfaction of all the specifications?

MS. MARTINS:  Yes, your Honor.

THE COURT:  So it says that on or about January 6th,

D66JGONP                    Plea

2013, Mr. Gonzalez associated with a convicted felon, in that four other individuals he was arrested with or his recent state offense have been previously convicted of a felony offense.

Does anybody want to add anything to that summary of of Probation Specification No. 6?  No?

MR. WEINSTEIN:  No, your Honor.

MS. MARTINS:  No, your Honor.

THE COURT:  So now, Mr. Gonzalez, let's talk about what sentence you might receive for this.  This is No. 6, called a Grade C violation, and it carries with it a policy guideline range -- a suggestion, it is not mandatory -- of 5 to 11 months of incarceration.  You also could be sentenced to up to two years of incarceration.  That is the statutory maximum of a term of imprisonment that was a violation, and you could be sentenced to a maximum term of supervised release of three years, minus any term of imprisonment.

Do you realize those are the maximum possible penalties for this offense?

THE DEFENDANT:  Yes.

MR. WEINSTEIN:  Your Honor, I call your attention to the last paragraph on 5.

THE COURT:  On 5?

MR. WEINSTEIN:  The terms of the maximum sentence.

(Pause)

THE COURT:  So you're talking about 5 which says on

D66JGONP                    Plea

January 6 --

MR. WEINSTEIN:  No.  I am sorry.  It is the two previous paragraphs in bold at the bottom of Page 5.

THE COURT:  Page 5?  I see.  I guess you're referring in particular to the last paragraph that says, "Should your Honor wish to aggregate the sentence previously imposed, the total term of imprisonment Mr. Gonzalez would currently be subjected to would be 17 months, as the term of imprisonment that was imposed for this previous revocation proceedings was 7 months, which would be deducted from the statutory maximum amount of 24 months.  Is that it?

MR. WEINSTEIN:  Yes.

THE COURT:  And the paragraph before says that deduction is a recommendation but it is not mandatory.  Is that right?

MR. WEINSTEIN:  That is absolutely right.

THE COURT:  Fair enough.

If you know, Mr. Gonzalez, there is no parole in the federal system, which is where we are?

THE DEFENDANT:  Yes, I know.

THE COURT:  You know also, I am sure, because we have been through this before, in addition to incarceration, you, as I have just suggested, could be subjected to further supervision, supervised release following incarceration, and with respect to supervised release, you need to be aware that

D66JGONP                    Plea

there would almost certainly be terms and conditions attached, and that if you failed to comply with those terms and conditions, you could following the hearing be returned to prison.  You realize that?

THE DEFENDANT:  Yes.

THE COURT:  If there were such a hearing, it would be without a jury and just before me as the sentencing judge.  You realize that?

THE DEFENDANT:  Yes.

THE COURT:  Are you currently serving any other sentences, either state or federal?

THE DEFENDANT:  No.  I just have an open state case.

THE COURT:  I will come to that.  Are you being prosecuted in another court for other crimes including state court?

THE DEFENDANT:  No.

MR. WEINSTEIN:  Yes.

THE DEFENDANT:  Yes, just --

THE COURT:  Maybe, Mr. Weinstein, do you want to help us with that.

MR. WEINSTEIN:  Sure.  My understanding is, and I have spoken to the lawyers as recently as today, there is an open charge which originally formed the basis for Specifications 1, 2, and 5 here.  The current status of that charge, according to defense counsel, is he has not been indicted.  The case will be

D66JGONP                    Plea

dismissed in a month or so, another 30-30.

THE COURT:  Is that just with respect to him?

MR. WEINSTEIN:  For all of them.

My understanding also is that there was a test of the victim's blood for any kind of narcotics or date rape drugs and that kind of thing, and it came back negative, I believe, although I haven't seen it.  That is what I have been told.

At least there is a belief of two of the lawyers I spoke to that this case will be dismissed probably sometime in July.  There is no guarantee, obviously, but --

THE COURT:  The state case?

MR. WEINSTEIN:  In the state case.

THE COURT:  What court is that?

MR. WEINSTEIN:  New York County Supreme, yes, New York County.

THE COURT:  Mr. Gonzalez, do you also understand that in figuring out what an appropriate sentence will be for you in this case, I'll consider a series of factors including the nature and the circumstances of this offense to which you're pleading guilty, associating with convicted felons, as well as your history and characteristics, and I will consider or factor in the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the needed educational or vocational or educational training or other care in the most

D66JGONP                      Plea

effective manner.

I will also look at the policy statements issued by the sentencing guidelines if there are any that apply to your case and seek to avoid unwarranted sentence disparities among similarly-situated defendants and also -- well, I don't think the restitution factors in here.  Have you discussed all these criteria and factors with Mr. Weinstein?

THE DEFENDANT:  Yes.

THE COURT:  Have you talked to him about how the court is likely to go about figuring out what is a fair and reasonable sentence?

THE DEFENDANT:  Yes.

THE COURT:  You realize also even if you don't like the sentence that I impose, you would not for that reason alone be able to withdraw today's guilty plea?

THE DEFENDANT:  Yes.

THE COURT:  You think you understand then the consequences of pleading guilty today?

THE DEFENDANT:  Yes, I do.

THE COURT:  Has anybody threatened you or in any way forced you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Including any attorneys?

THE DEFENDANT:  No.

THE COURT:  Has anybody made any promise to you or

D66JGONP                    Plea

inducement to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anybody made any promise to you as to what sentence you will receive?

THE DEFENDANT:  No.

THE COURT:  Let's turn to the government and ask in summary form what the government thinks they would be able to prove if this case went to a hearing as opposed to being resolved through today's allocution.

MS. MARTINS:  Your Honor, I think dealing with the specification to which Mr. Gonzalez has pled guilty, the government would be able to prove by a preponderance that he knew that several of the individuals with whom he was arrested were felons in fact.  I believe we have records showing communications between them while they were incarcerated and depositing of money in several accounts and that sort of activity.

THE COURT:  Mr. Gonzalez, having heard the government and in light of the questions I've been asking you and the answers you've given, do you wish at this time to plead guilty or not guilty?

THE DEFENDANT:  I plead guilty.

THE COURT:  Tell me in your words what it is that makes you believe you're guilty of violating the terms of your supervised release.

D66JGONP                    Plea

THE DEFENDANT:  I was out hanging out January 6th with convicted felons.

THE COURT:  You knew they were?

THE DEFENDANT:  Yes.

THE COURT:  At the time?

THE DEFENDANT:  Yes.

THE COURT:  You knew you weren't supposed to do that?

THE DEFENDANT:  Yes.

THE COURT:  Are you pleading guilty to this offense because you are, in fact, guilty of this offense?

THE DEFENDANT:  Yes, I am.

THE COURT:  Does government counsel agree there is a sufficient factual predicate for today's guilty plea?

MS. MARTINS:  Yes.

MR. WEINSTEIN:  Yes.

THE COURT:  So do I.  It is the finding of the Court in this matter that Mr. Gonzalez is fully competent and capable entering an informed plea, that he is aware of the nature of the charges against him and the consequences of pleading guilty and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact supporting each of the essential elements of the offense.  The plea is, therefore, accepted and Mr. Gonzalez is adjudged guilty of the offense set forth in Probation Specification No. 6.

Refresh my recollection if you know, was there not one

D66JGONP                      Plea

of the other co-defendants who was also on supervised release at the time?

        MS. MARTINS:  Your Honor, there are two other co-defendants.  One, Joseph Hunter was on supervised release before Judge Griesa and he was sentenced one or two weeks ago by Judge Griesa in this matter.

        THE COURT:  To what?

        MS. MARTINS:  He did not plead to the same specification.  He pled to a specification concerning employment and was sentenced to time-served.

        There is another co-defendant, Mr. Morales before Judge Preska, and he will be pleading to the same specifications, but he has not yet done so.  That is scheduled for next week.

        THE COURT:  Here?  As here?

        MS. MARTINS:  Yes.

        MR. WEINSTEIN:  May I supplement what Ms. Martins said?  The person who pled was James Hunter -- Joseph Hunter, and Joseph Hunter in the state was complaint despite what he plead to in federal court, is the identical charges of the very sexual acts and kidnapping according to the complaint.  So the open particulars of this case have a lot to do with I think the severity.

        Mr. Hunter is identically situated, although there is a different specification.  He acknowledged his underlying

D66JGONP                        Plea

state case which is open as is his.  I am looking at the state complaint which has Joseph Hunter and David Gonzalez, both charged in a criminal sexual act in the first degree, kidnapping in the second degree, et cetera.  So the specification has a lot less to do, it seems to me, and this will go to disparity.

THE COURT:  Unless you feel strongly -- and, Ms. Martins, you indicated in your letter we would sentence today -- it would be my preference actually not to and to actually get some submissions from you, taking into account, for example, the other cases, et cetera, and history, whatever you want to bring to my attention, and that in part is a function which I wouldn't mind hearing a little bit more about, how Mr. Gonzalez is doing.  I remember we set a bail package or you did sometime ago, how he is back on supervision and how he has he been doing?

MR. FRANKELIS:  He has been reporting as directed and on home confinement as a condition with electronic monitoring. We have given him permission to be out to do basic errands, meet with his attorneys.  As of recently when we learned he was going to plead to a specification, we gave him more time out, with his request.

There was an issue last night, however.  We spoke with Mr. Gonzalez yesterday, not knowing what would happen here today, and he had also advised us no matter what happened here

D66JGONP                    Plea

today, if he were released, he wasn't going to be going back to his girlfriend.

THE COURT:  Not?

MR. FRANKELIS:  Not.  There is issue between them and he, in turn, would reside with his mother.  We directed him to disconnect the the box, monitoring unit at 8:00 o'clock this morning and bring it with him to court.  It would be easier for us to figure out what would happen from him.

We did get a notification at midnight saying the box was disconnected.  A call was made out to his house.  We spoke with his girlfriend, who indicated he went out with friends to drink.

THE COURT:  This is what troubles me, Mr. Gonzalez.  I don't know when you're going to get this altogether.  That is real my question.  You don't have to talk, but you are welcome to.  I don't know if you want to talk to Mr. Weinstein first what you were going to say.

(Off-the-record discussion)

MR. WEINSTEIN:  The only thing he was going to say was he had an argument with his girlfriend, not physical.

THE COURT:  I get it.

MR. WEINSTEIN:  He was told to detach the monitor, and maybe he did it a little earlier than he had to, but he has always been in court.

THE COURT:  I know he always comes to court, no

D66JGONP                        Plea

question, but he is 29 and he has got a pretty long record already, you know, and I am trying to figure out when the change was going to happen here, and what do you think?

MR. WEINSTEIN:  Are you asking me?

THE COURT:  That I am asking him.

THE DEFENDANT:  First I need to get a job.  It has been rough.  I got released November 2nd and --

THE COURT:  So now what is it now?

THE DEFENDANT:  I was only out 45, almost two months, and I fought this other big case right now, with the help of God it is going to get thrown out.  That is a big worry off my shoulder.

THE COURT:  I get that.  I get that.  So the sort of living situation sounds a little chaotic?

THE DEFENDANT:  This has been going on for a month, but being the court date was coming up now, I decided to stick it out with her till then, but this was going on for a month.

I wasn't working.  She couldn't pay for the cable bill, and I was going to go then.  Since the court date was coming close, almost here, I decided to stay.  I guess they got a little out of hand, but I didn't have no drinks.  I went to the front of the building.

THE COURT:  Where does your mother live?

THE DEFENDANT:  When I first came out in '09, the parole date, by Fordham.

D66JGONP                        Plea

THE COURT:  Does that work, living there?

THE DEFENDANT:  Yes.

THE COURT:  That is a stable situation?

THE DEFENDANT:  Yes.  I have my own room there and everything.

THE COURT:  Don't we have any counseling as part of the supervision here?

MR. FRANKELIS:  He was attending Daytop, your Honor, prior to him being arrested initially, and he was locked up for a certain period of time.  Once he came out, they didn't put him back in.

THE COURT:  I actually recommend that he do that or some sort of therapeutic counseling to help him in this period. It seems to me you should have that anyway.

MR. FRANKELIS:  I am not sure what period of time your Honor was thinking about as far as adjourning this matter for sentencing.

THE COURT:  If I had a day, not that I can remember, back to 2007, but if I had a day, there would be a provision in here, and sure enough it is the first specification, it says defendant shall participate in weekly therapeutic counseling by a licensed therapist.  That is No. 1.

And it was obvious to me, and he then begins in April 2012 -- not by memory, just by knowing how I do these things. Number one says throughout the period of supervised release,

D66JGONP                    Plea

the defendant shall participate in weekly therapeutic counseling by a licensed therapist.

By the way, No. 2 in both those judgments has to do with substance abuse counseling.  The No. 1 thing is therapeutic counseling.  I don't know if it has ever happened.  With that, I would like to have --

MR. FRANKELIS:  It has happened, but my only concern would be at this point if there would be a short period of time, should he start therapy and start making headway, it would just be interrupted.

THE COURT:  It is a risky I would run that it would be more beneficial to start and then see where we go from there.

Does Dr. Cafree figure into his life at all?

MR. FRANKELIS:  Dr. Cafree does not.  With budget issues in our office, they don't accept Medicaid.

THE COURT:  You need a doctor that accepts Medicaid?

MR. FRANKELIS:  Right.

THE COURT:  You have that?

MR. FRANKELIS:  Yes, we have programs.

THE COURT:  I would get that in the works.  I think that would help Mr. Gonzalez, actually.

The other thing I would like to factor in to sentencing is certainly if we knew what happened in the state proceedings, you know, it would make a big difference, it seems to me, if the case was against everybody or not.

D66JGONP                      Plea

MR. WEINSTEIN:  The next court day is July 11th.

THE COURT:  Here is the thing.  I am going to give you a date after that, but if there is a problem in-between, I would like the government to let me know, we'll calendar the case, and if it is a serious problem, it will likely be a remand between now and then.  I hope there is not.  I hope that it goes smoothly between now and the next court date, but just head's up that's a possibility.

MS. MARTINS:  I assume, your Honor, the same conditions that he has been under --

THE COURT:  Absolutely.

MS. MARTINS:  His brace will have to be reconnected.

MR. FRANKELIS:  The bracelet is still on him.  We should verify this.

THE COURT:  The other conditions I am at least equally concerned with, which is therapy and substance abuse.

MS. MARTINS:  Of course.

THE COURT:  Okay.

(Off-the-record discussion)

MR. WEINSTEIN:  If you're looking for a date, I will be away the second half of July.

THE COURT:  Does that include July 18th?

MR. WEINSTEIN:  Yes.

THE COURT:  When do you leave?

MR. WEINSTEIN:  The 12th.  I think that is a Friday.

D66JGONP                    Plea

THE COURT:  That is a problem because the 11th is his court date.

MR. WEINSTEIN:  I understand that.

THE COURT:  So August is not good for me.  How about September 3, the day after Labor Day?

MR. WEINSTEIN:  Fine.

THE COURT:  You have your choice between 9:00 or 2:30.

MR. WEINSTEIN:  2:30.

THE COURT:  So this is now June, he has got close to three months.  I am expecting you don't get into trouble during that period.  As I said, if you do, then we are going to accelerate the case and there will more than likely be remand.

MR. WEINSTEIN:  One possibility, and if the court wants to test the waters, would you permit him to look for a job?

THE COURT:  Absolutely.

MR. WEINSTEIN:  I don't know if he will find one.

THE COURT:  I will not only permit him, but I would encourage it, yes.  Now I would also like written submissions, Mr. Weinstein, before you leave or sometime in early August.

MR. WEINSTEIN:  That will make more sense.

THE COURT:  How about August 5?  And then a week later a response from the government.  That can be in the form of letters.  It doesn't have to be anything -- so, okay.

I am indicating that the same terms and conditions of

D66JGONP                          Plea

supervised release apply, which includes therapy, among other things, and substance abuse.

MR. WEINSTEIN:  I have one other question.  It is at least my experience with state courts that firm dates are not often firm.

THE COURT:  Sadly, that turns out to be true here, too.

MR. WEINSTEIN:  Right, although we are waiting for the state.

THE COURT:  Yes.

MR. WEINSTEIN:  Would you like us to write to you if it turns out --

THE COURT:  No.  We are going to go forward on this schedule no matter what.

MR. WEINSTEIN:  Fine.

THE COURT:  All right.  Everybody clear?

MS. MARTINS:  Yes, your Honor.  Thank you.

THE COURT:  David?

THE DEFENDANT:  Yes.

THE COURT:  I will see you.  Thanks.

(Court adjourned)